3-18-0527 People of the State of Illinois Advocate by Justin Nicolosi v. Robert Bomar, Jr. Account by Mark Fisher Mr. Fisher Good afternoon, Your Honors. May it please the Court, Counsel, Mark Fisher from the Appellate Defender's Office, representing the defendant in this case, Robert Bomar, Jr. Mr. Bomar was convicted in a jury trial of attempted first-degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm. Specifically, the jury found that on May 26, 2007, the defendant shot and injured DeAndrew Abbott, pulled the trigger at close range a second time in Mr. Abbott's direction, but the gun did not fire, and then shortly thereafter fired additional shots in the direction of both Abbott and Levante Cooper. Mr. Bomar received three sentences totaling 70 years' imprisonment. His convictions and sentences were affirmed by this Court on direct appeal. He subsequently, although this Court did remand for a Krenkel hearing, he subsequently filed a pro se post-conviction petition supported by the recantation affidavit of prosecution witness Corey Martin. The case eventually proceeded to a third-stage evidentiary hearing. At the conclusion of that hearing, the judge denied relief. Of the single issues raised in this appeal, the judge's order denying post-conviction relief was against the manifest weight of the uncontradicted evidence presented by the defendant at the evidentiary hearing. And as a result, the defendant respectfully asked this Court to reverse that order denying relief and to remand this cause for a new trial. Now at trial, there were three primary witnesses who testified against the defendant, DeAndrew Abbott, Levante Cooper, and Corey Martin. Mr. Abbott... That is correct. That is correct. However, it's important to point out that the testimony of both of those individuals was impeached by prior inconsistent statements. After the shooting, Mr. Abbott went to the hospital. He was treated for the gunshot wound. He was questioned by police, and he told police that earlier that evening he was walking to his car when he heard gunshots ring out, and one of them struck and injured him. He further told police he didn't see the shooter, didn't know who the shooter was, and he had no idea as to anybody who might have the motivation to do him harm. Cooper, meanwhile, was also questioned by police and was shown a six-photo lineup that included a photograph of Mr. Beaumont, and he told police after looking at all six photos he could not identify any of those photographs. Now, D'Andrew Abbott testified that about three days prior to the incident he got into a disagreement or an argument at work with a co-worker who happened to be the defendant's girlfriend. Later that day, he was confronted by Mr. Beaumont, who was asked about this argument, and he testified that he told Beaumont that the argument had been resolved, it was all over and done with, and there was nothing further to talk about. About three days later, Abbott and his friend Lavonte Cooper went to a party that was also attended by the defendant and his girlfriend, and according to Abbott and Cooper, at some point during that party, the defendant approached Abbott and challenged him to a fistfight, and Abbott agreed. So Abbott and Cooper further testified that the three men, along with two other individuals, allegedly, who were also at the party, left the party, walked up the street a few blocks, Abbott removed his shirt, preparing for the fight, and with that, he said the defendant took out a gun and shot him in the stomach, causing him to fall to the ground. He said the defendant then walked up to him and at close range pulled the trigger again, but this time the gun did not fire. Abbott then got up onto his feet, ran away along with Cooper, and according to Cooper and Abbott, as they ran, the defendant fired additional shots in their direction. Cory Martin, meanwhile, testified that at some point after the incident, he was an inmate in the county jail, awaiting charges on unrelated drug offenses. He testified that while in the county jail, he encountered a friend of his, Robert Bomar, and he testified that Bomar told him that he was the shooter. Now, as I mentioned previously, after the defendant was convicted, after his convictions were upheld, he filed a post-conviction petition. This was about four years after the incident, and that petition was supported by the affidavit of Cory Martin, who stated in his affidavit that his testimony at trial was false, that he had no information and no knowledge of any of the facts about which he testified at trial, and furthermore, that he was coerced by the trial prosecutor into giving false testimony against the defendant. Post-conviction counsel was appointed. Counsel added some additional issues that are not before the court today. Ultimately, the case proceeded to an evidentiary hearing. It took about six and a half years from the time the petition was filed until the evidentiary hearing was filed. Unfortunately, in that time, the defense lost touch with Cory Martin, didn't know where he was, couldn't find him. At counsel's request, the judge appointed an investigator to search for Martin, but the investigator was unsuccessful. So when the case proceeded to the evidentiary hearing, the only evidence presented by the defense was the affidavit from Cory Martin. Now, most of the time when we see a case that gets to a third-stage evidentiary hearing, we see live witness testimony. The Post-Conviction Act makes it very clear that the defense is not limited to presenting live witness testimony, and if the defense presents other evidence but not live witness testimony, the judge can still grant post-conviction relief, and that's specifically found in 725 ILCS 5-122-6, which states that the post-conviction judge may receive proof by affidavits, depositions, oral testimony, or other evidence. So the defendant's claim could succeed based only on the affidavit. Furthermore, and probably more importantly, that affidavit stood uncontradicted. Well, it was contradicted by his own trial testimony. Well, true, but of course his affidavit was now contradicting that testimony. So, again, his affidavit stated that he was coerced by the trial prosecutor into giving false testimony. The state at the evidentiary hearing did not call the trial prosecutor to refute those claims, did not present any evidence refuting those claims. Because that evidence was uncontradicted, the judge's order denying relief as to that issue was manifestly erroneous. It was inconsistent with the evidence with which he was presented at that hearing. When you say uncontradicted, the evidence from the defendant is the affidavit? Well, it's the affidavit of Corey Martin. Yeah, right. Correct, correct. By uncontradicted, I mean it was not refuted or rebutted at the evidentiary hearing. So we have this statement by an affidavit, and no other evidence that the state made some deal with the witnesses? Well, it's interesting how Hunter brings that up, and I was going to mention that as well. Post-conviction counsel, well, the only claim in the original petition was based on the affidavit of Mr. Martin. Post-conviction counsel expanded that claim a bit, made it almost into a two-part claim, although he didn't specifically say Part A and Part B. But he alleged a due process violation based on the false testimony of Corey Martin, number one, based on the allegations in the affidavit that he was coerced to give that false testimony, and then number two, that he had received a favorable plea deal from the state which was not divulged to the jury at trial. Now, the post-conviction judge correctly noted that there was no evidence presented of a deal. There was evidence presented as to the sentences Mr. Martin ultimately received on those drug charges that he was awaiting trial for in the county jail, and post-conviction counsel argued that those sentences were so low that he must have gotten a deal. But the judge said, well, that's speculation, and so the post-conviction judge rejected the plea deal part of the argument, and the defendant has no objection to that. I'm not arguing that today. But the post-conviction judge did not specifically talk about the allegations in Martin's affidavit, the allegations that the trial prosecutor solicited perjury at trial from Corey Martin. The judge did go on to say that even if there was any error with respect to Martin's testimony, in effect it was harmless because Martin's testimony was relatively insignificant. The fact of the matter is, as your honors well know, Illinois case law recognizes that evidence of a defendant's pretrial incriminating statements is among the most powerful and compelling evidence that can be presented at a criminal trial. The flip side of that is that it's among the most prejudicial evidence that can be presented against the defendant at a criminal trial. So Corey Martin's testimony was not at all insignificant. But the post-conviction judge is faced with Martin's testimony at trial. The defendant told him he did it, and his affidavit, which says the defendant didn't say that at all, I don't know anything, that I was coerced. So that leads to options. He's lying in the affidavit or he was lying at trial. Well, his affidavit says he's lying at trial. His sworn testimony at trial said that he was telling the truth. Sure, and now he's saying I was coerced. It's untrue. The state presumably could have called the trial prosecutor because he said in his affidavit it was the trial prosecutor that coerced him into giving that false testimony. So what was done was he lying? Excuse me? So what was done was Corey Martin lying? Well, we don't know, but he's saying today I lied back then and the state presented nothing to rebut. Presumably the state could have called the trial prosecutor to say he was lying or someone else that he spoke to between the time that he was in the county jail and the time he hit the standard trial. One would think that he probably didn't just call it, just assuming that his affidavit, well, assuming that his trial testimony is correct, presumably he wouldn't have just called up the trial prosecutor from the county jail and said, hey, guess what? From what I just heard, one would think he would have gone through other channels, maybe somebody at the county jail. So it would seem that there might have been at least a couple of different people, at least one person, the trial prosecutor, but perhaps more than one person the state could have called to try and rebut. And then it becomes, of course, a credibility battle, but that didn't happen. So his affidavit stands uncontradicted. In addition, as I mentioned before in response to Justice Carter's question, the prosecution testimony at trial from the two alleged eyewitnesses, Abbott and Cooper, was somewhat problematic because, as I pointed out, although the state correctly argues on appeal, they were consistent in their trial testimony that Mr. Bomar was the shooter, but their testimony was impeached with prior inconsistent statements. Based on that impeachment, a rational prior effect could have voted to acquit had it only heard the testimony of Abbott and Cooper. Thank you. They say, well, they're saying two different things here. I don't know what to believe. I'm not going to believe them. But it's very possible that the jury voted to convict in this case based on the testimony of Corey Martin. Again, evidence that Illinois case law recognizes is among the most powerful evidence that can be presented in a criminal trial. Testimony that a defendant said, yeah, I'm the guy who did it. So I would submit, Your Honors, that the trial judge here seriously undervalued the trial testimony of Corey Martin. And I think the state on appeal overvalues the testimony of Abbott and Cooper. In addition, as I mentioned previously, in talking about Martin, the judge talked about the plea deal aspect of that argument. There was nothing said about that in the affidavit. But he didn't specifically talk about the allegations that the state solicited perjury from Mr. Martin. So I think the judge's analysis here was flawed in a couple of different respects. What's our Supreme Court say about recantation testimony? Well, Illinois courts, and I assume probably courts around the country, generally cast a bit of a dim eye on recantation testimony, affidavits, evidence, what have you. At the same time, courts recognize that they must be considered on a case-by-case basis. Certainly the fact that a post-conviction petition, for example, is supported by a recantation affidavit is not reason to dismiss without an evidentiary. Cases recognize it must go to an evidentiary because there's question of credibility. And so the fact that maybe many recantation affidavits may be untrue does not mean that they're all untrue. And, of course, I've cited case law to that extent in the brief. Thank you. Briefly, defendant, respectfully ask your honors to remand this class for a new trial because the judge's ruling here, again, was against the manifest weight of the uncontradicted evidence presented as to this claim at the evidentiary hearing. Thank you. Thank you. Mr. Nicolosi. Thank you. Good afternoon, your honors. May it please the court. Counsel, your honors, the state would respectfully ask this court to affirm the trial judge's denial of the defendant's post-conviction petition as the court's finding was not manifestly erroneous. Quite simply, the trial court was under no obligation to believe Corey Martin's affidavit recanting his trial testimony. As Justice Schmidt, I believe, pointed out during the counsel's argument, this affidavit was contradicted by his own trial testimony. Martin testified that the defendant did tell him that he shot D'Andrew Abbott. And he testified as to other details of the events in question, and that, of course, in his recantation affidavit he said, I didn't know any of that. That was all based on pressure. So clearly there was some contradiction of Corey Martin's affidavit. And it's clear that Corey Martin, and I'm sure this is in part why the trial court basically dismissed that affidavit as being untrue, is because Corey Martin is clearly a liar. He clearly either lied at trial or he's lying in the affidavit. And, of course, Corey Martin was not available to testify at this third-stage hearing. There were some comments before or earlier before the final hearing that Martin was uncooperative and didn't want to testify, didn't want to come to court, said he committed perjury, and he wasn't going to be cooperative. Then later on they said, well, there was no way they could find him. Sure, yes, Your Honor. But the fact of the matter is I think if Corey Martin would have testified, he would have shed more light on this under oath. And the fact is the defendant has the burden at this stage of showing a substantial constitutional violation. And based on Corey Martin's affidavit alone, the state submits that he fell short of that burden, and the trial court observed that as well. Why would the state not call the two prosecutors? They were both named in the affidavit. Yes, that's a good question, Your Honor. But I think the fact is Corey Martin testified that he never received a deal and that there were no promises from the prosecutors. Why would you believe him when he said he was a liar? Well, sure, Your Honor. He testified under oath with great detail about what happened. I think that supports the fact that his testimony and the details that he gleaned from the defendant in prison kind of matched up with the testimonies of DeAndre Rabbit and Levante Cooper. I think that supports the fact that Corey Martin actually did know what was going on at that time. His affidavit was under oath, too, right? Yes, but it was without any detail. It didn't even mention anything about a deal or promises. The prosecutors that he said coerced him. Sure, but Your Honor, he still didn't mention any kind of deal or promises or anything like that. It was very general. It was very vague. What was the trial court at this evidentiary hearing to do? He's faced with this detailed trial testimony and this unsupported affidavit with no testimony, no nuance, basically no context and no detail. Again, the trial court is not under any obligation to believe this affidavit just because it exists. At the tail end of counsel's argument, it was established that the case law has found recantations to be inherently unreliable. The Supreme Court in 97 said in People v. Fidle that a new trial can only be ordered under recantations under extraordinary circumstances, and the State doesn't see how this is an extraordinary circumstance. Every recantation involves somebody going back on something that they said earlier. There's nothing special about this case. There's no testimony, there's no detail here from which the trial court would have been justified in granting the defendant's relief. Moving on, even if, you know, assuming our U.N. know if this testimony was perjured, it would not have changed the outcome of the defendant's trial, and the trial court was proper in finding that. As the State argues pretty heavily in our brief, the strongest evidence in this case was not Martin's testimony, but it was from DeAndre Abbott and LeVante Cooper, who both identified the defendant in court as having shot Abbott, as having held the gun to Abbott's head and firing additional shots as the men fled. They testified that they saw that there was a confrontation earlier at McDonald's between Abbott and the defendant about the defendant's girlfriend, and clearly Abbott and Cooper testified that the defendant and Abbott were going to fight, and that's why they left the party. These were the only two men that testified as to the scene on the street, and they were both very consistent with each other. And, of course, Martin's testimony, it had some issues. There were some credibility issues. He was an admitted drug addict, he was a convict, and he had four drug cases. So if you were to have removed his evidence from the trial that the State submits, that the strongest evidence would have still remained, and that the defendant would have been convicted of this crime. That would be the impeached evidence of the victim and his companions? Well, Your Honor, all the evidence was impeached. Everyone was impeached. Abbott was impeached, and Cooper was impeached. But I think that Abbott and Cooper's explanations for why they lied I think would carry some weight. Abbott said he was scared of the defendant. He was scared that the defendant would come back and finish the job. That's why he didn't tell authorities who shot him, even though he knew. And he also said he didn't want to get involved in a court case. I think that's pretty reasonable. I think that we can all understand why somebody who was just shot by somebody may be afraid of that person in the future. And Cooper, I don't think we have, I could be wrong, but I believe the record doesn't explain why he didn't pick out the defendant in the photo lineup while he identified him in court. The State would submit that it's probably a similar circumstance to why Abbott lied, that he was afraid of the defendant too. He was involved in this altercation, and the defendant was clearly a violent man, and he didn't want to get involved. So the people would submit that the reasons for them lying are reasonable, and their testimonies are strong enough to, or clearly they were strong enough to result in a conviction, and they were believable, they were very consistent, and they were the only two witnesses who actually saw what happened. So with that having been said, the State would ask this court to affirm the trial court's denial of the defendant's post-conviction petition. Are there any other questions I didn't have an answer to? Thank you. Thank you, Mr. Piccolosi. Mr. Fisher, is someone about? I'd like to talk for a moment about Mr. Abbott and what he told police, commenting on some of the things that counsel for the State just mentioned. It's true that according to the testimony in trial, when Abbott eventually told police, yeah, Robert Beaumar, Jr. was the shooter, he did say, make comments along the lines of, well, I was scared that he would come back and finish the job. Now, if you believe his testimony as to what happened out on the street that day, the defendant already tried to finish the job. He tried to finish it twice. First he shoots him in the stomach, then comes up at close range, pulls the trigger again, but it doesn't fire. Then as he's running away, he fires again. It sounds like a complete homicidal maniac who tried to finish the job twice. And if Abbott's convinced that Mr. Beaumar is going to try and finish the job, he knows where he lives, he knows where he works. The best way to prevent him from finishing the job is to tell police, yes, this guy arrested him, convicted him, put him away. So that explanation makes absolutely no sense to me. It also makes no sense to me that he would say to the police, well, I just didn't want to get involved. I mean, when you're the gunshot victim, needless to say, you're involved. That sounds more like a third party eyewitness to an incident. I don't want to get involved. When you're the victim, you're involved. He also said that he eventually told police that the defendant was the shooter after the officer assured him that he wouldn't get into trouble and also impressed upon him the seriousness of the incident. I mean, he's in the hospital with a gunshot wound in his stomach, and the police has to impress upon him that this is serious? And why would he get in trouble? He was the victim. He didn't do anything according to his testimony. So I would submit that his explanations just simply did not ring true in this case. If he had trouble with the state, would he get in trouble with others? I have absolutely no idea, but I certainly wouldn't be in trouble with the state or the police. He's the victim. There's no allegation that he did anything wrong. Why would he be in trouble with other people? That could be, but, I mean, again, if you believe his testimony, whoever the shooter was tried to finish him off twice. Again, knows where he works, et cetera, et cetera. It really sounds from the circumstances that what he initially told the police made more sense. He's walking to his car. He hears shots, doesn't know who it is, didn't know who it was. The state says there was no nuance in the affidavit of Mr. Martin. I don't know how much nuance you need beyond saying what I said at trial was false. I was coerced. What more do you need to say? The state says the affidavit didn't mention a deal, and that's true, but that's only, again, part of this due process violation argument set forth in the amended post-conviction petition. And I'm not arguing today that he should have received a new trial because there was evidence that Mr. Martin received a deal. That was, as the judge recognized, it was a speculative claim. He rejected it, and I have no problem with that. What I'm arguing is that the allegations in the affidavit that he gave false testimony which was coerced by the trial prosecutor, that forms the basis for the argument defendants making on appeal. That argument is an argument that the judge really didn't talk about. He talked about the plea deal issue, did not talk about the specific allegations in the affidavit. Last thing I want to say, it's been mentioned a couple of times by your honors today. It was mentioned by the state. I mean, certainly the affidavit of Mr. Martin was contradicted by his trial testimony, or looking at it another way, the trial testimony was contradicted by the affidavit. But it's kind of easy to say that because if the affidavit is simply unbelievable and no good because it was contradicted by the trial testimony, then your honors would be holding that a recantation affidavit can never form the basis for post-conviction relief. Thank you. That just isn't the law in Illinois. Also, I imagine your honors have seen it or will see it, but in the footnote on pages 2 and 3 of the reply brief, I cite numerous cases in which Illinois inmates were exonerated based on later recantations. So, yes, oftentimes they are not worthy of belief. That doesn't mean that they're never worthy of belief. And here, very seemingly, the state could have rebutted. The state did not offer nothing to rebut that affidavit. And because it was uncontradicted, the judge was not at liberty to deny relief, and that is why the defendant respectfully asked this court to reverse that order and to remand for a new trial. Thank you, your honors. Thank you to Mr. Nicolosi. This matter will be taken under advisement. This position will be issued. Right now, we'll be at a brief recess for a panel change before the next case.